Good morning, Your Honors, and may it please the Court. Alison Kopp, pro bono, on behalf of the petitioner in this case, Mr. Romero. And if I may, I'd like to reserve two minutes for rebuttal. You certainly may. Just watch the demo. I will, Your Honor. The Narwood County Court. Today, this Court is faced with the narrow and novel issue of whether two crimes which share identical elements may result in opposite consequences under the Federal Immigration laws. And Taylor v. United States makes clear that they cannot. Taylor bars the arbitrary application of the Federal laws to, excuse me, based on the label of a state crime. And Mr. Romero's removal in this case is arbitrary because his crime of conviction shares the same elements of a crime whose conviction does not result in removal. Secondly, Your Honors, Mr. Romero was also denied both his statutory and due process rights to counsel when the immigration judge ignored the directives of this Court and failed to advise him, one, of his right to counsel at the time this previous attorney withdrew, and secondly, failed to advise him of the implications of proceeding pro se. Well, with respect to that second point, didn't your client waive the right? Didn't he – he certainly had the opportunity and he declined to retain counsel? No, Your Honor. He did retain counsel, that is correct. But as this Court has made clear multiple times, in order for a waiver to be valid, it must be knowing involuntary. And in this case, that waiver was not knowing involuntary because Mr. Romero was not advised of his right to counsel at the time his previous attorney withdrew. And in both cases – Excuse me, though, counsel, with respect, I – do you not agree that under Tawadros, we look at the totality of the circumstances, right? I'm sorry, Your Honor? Under the case of Tawadros, we look at the totality of the circumstances. There's no right to counsel in immigration. You have a right to due process, right? And under Tawadros, we're supposed to look at the totality of the circumstances. I think that's correct, Your Honor. Okay. So here, as my colleague indicated, when your client was first brought before the IJ, he was advised of his right to counsel. He got counsel. Then you have a situation where he did several things. He was asked whether he wanted to permit his attorney to withdraw. He said he did. There's even some indication that he had requested that he withdraw. He was asked whether he supported the withdrawal, and he said that he did. And finally, he was asked whether he wanted a continuance so he could get another attorney, and he said he didn't. Doesn't it strain credulity for us to latch on to a sentence that you all do, but can have any number of meanings? When, in fact, when you look at the totality of the circumstances, he received a plenary opportunity to make a choice. Well, Your Honor, a few responses to that. First is that you're right, that we do look at the totality of the circumstances. And it's important to remember that his immigration hearings took place over a seven-month period. So while he may have been advised of the right to counsel seven months previous, he was not advised at the time his attorney withdrew, as this Court requires in Tawadros and as recently as a few weeks ago. Wait, wait, wait. Are you saying that Tawadros requires the I.J. on a second occasion to advise him of his right to counsel specifically? That's right, Your Honor. Where does it say that in Tawadros? It says in Tawadros, Your Honor, that at the time that the previous attorney withdraws, that the immigration judge has a duty, which this Court has established is not a Herculean effort, that they just simply have a duty to advise the immigrant that they have a right to counsel and also to advise them that if they waive that right, the implications of doing so. And recently, as a few weeks ago in the Laron-Dominguez case, this Court reiterated that and held that where the immigrant there had an attorney, the attorney did not show up at the hearing, that it was not enough that the I.J. simply offered a continuance. The I.J. had a duty to advise the immigrant that he had a right to counsel at that time. You read Tawadros very differently than I do, counsel, but let's say for a moment that you're correct. You still look at the totality of the circumstances, and here it seems to me your client had all kinds of advice about that. It wasn't just whether it was a right to continuance. He was reminded that he had a right to counsel, whether he, what his position was about his attorney's request to withdraw, and all these other things that I mentioned. There's just simply no right to counsel like there would be in a criminal proceeding. You don't disagree with that, do you? Well, no, Your Honor, not that there's the same right to counsel stemming from the Sixth Amendment, but there is definitively a right to counsel in immigration proceedings from Section 292 of the INA and also from the Fifth Amendment due process clause. So it's very clear that he had a right to counsel. I think, as Your Honor is pointing out, it is important to look at the totality of the circumstances, and here we had a situation where Mr. O'Meara was going to say that he had a right to counsel. I thought we started off our discussion with the fact that he doesn't have a right to counsel in immigration proceedings. He has a due process right to have a fair hearing, and that's been interpreted to mean that having counsel is appropriate, but there's no constitutional right to counsel, is there? Well, Your Honor, this Court made clear in both the Ram and Tall Address that the right to counsel stems from the Fifth Amendment of the Constitution. And in addition to that the due process right. Right, right. And setting that aside, there's also a statutory right to counsel in Section 292 of the INA. So I think wherever his right stems from, he did have a right to be represented in this case, and it wasn't fulfilled because not only was he not informed of that right. You're telling us he did not elect to represent himself. I guess so, Your Honor, yes. Very well. Why don't you talk about the aggravated felony definition? Certainly, Your Honor. In this case, attempted subordination of perjury punishes the same conduct as solicitation of perjury. And the government does not dispute that both of those crimes have the same generic elements. Now, because solicitation of perjury is not an aggravated felony, it follows that per the directive of Taylor, which says that we must treat like conduct and like manner, that the Federal laws need to be applied uniformly, that because solicitation of perjury is not an aggravated felony, that attempted subordination of perjury is similarly not an aggravated felony. How do you deal with Saavedra Velazquez? Well, Your Honor, Saavedra does not definitively state that the Court must conduct a two-part analysis. And, in fact, in the case It says that the California Attempt Statute is the categorical equivalent of the Federal Attempt Statute, doesn't it? It does, Your Honor, and we believe that Saavedra sets its own bounds, first of all, that it did not consider the Meaders case, which we discussed extensively in the briefs. But aside from that, it's instructive, I think, to look at the Gomez-Hernandez case, which has come out since Saavedra. And in that case, the Court first conducted a bifurcated analysis, as Saavedra did, and then conducted a holistic analysis. And when conducting the holistic analysis, reached its holding based on that. And that's the only thing we're asking the Court to do here, is that where you have a situation where conducting a bifurcated analysis under Saavedra creates a problem with Taylor, where you're treating then similar con – not similar conduct, identical conduct differently, then the Court has a duty to conduct a holistic analysis. I know we're in California, and we like to talk about holistic. But let's talk about the real world here. As I understand it, you are, in effect, inviting us to suggest that your client was convicted of solicitation, not attempt. Is that correct? No, Your Honor. You're not doing that. No. Certainly not, Your Honor. And I see I'm running out of time, and I'd like to answer your question and reserve a little time for rebuttal. But, no, we're not arguing that he should have been convicted of solicitation. What we're saying is that because the elements are the – of the crimes are the same, treating the crimes differently under the INA effectively gives the prosecutor discretion to decide who's removable and who's not based simply on the name of the crime they charged the immigrant with. And that's arbitrary, and it's not allowed under this Court's decision in Taylor. Very well. You can retain the rest of your time for rebuttal. We will hear now from the government. May it please the Court. I'm Manning Evans. I represent the government in this matter. Before addressing Petitioner's removability, I'll focus on his claim to denial of the right to counsel. And to begin with, I'd like to say that the Petitioner has waived any argument that he need not show prejudice from any claimed denial of counsel. This issue has been raised for the first time in a 28-J letter. This Court has previously said that's not adequate to preserve the issue. Meanwhile, the briefs in this case have all focused on whether or not there was prejudice if you reach that question. Let me ask you this, counsel, putting aside the waiver issue for a moment. Does Montes Lopez in any way effectively overrule the prejudice concept in Tawadros? Well, the Court in Montes said that the Court had left open whether or not prejudice was necessary, and that I think we'd have to look pretty closely at Montes to see whether or not the situation in that case is similar to the situation here. Montes was a case where the alien's attorney did not show up at the hearing, and the alien had had no notice that he wouldn't do that. That's a very different situation than here, where three weeks before the hearing, the Petitioner here apparently went to his attorney and said, I don't want you to represent me anymore, and a motion to withdraw was filed. So the alien here certainly was not surprised and repeatedly said that he wanted to proceed on his own. At page 126 of the record, he says, I'll take this on my own. And there were three questions from the IJ Director. Excuse me. You're skipping over the whether or not he adequately waived counsel, and I wanted to focus for a moment just on the issue of whether we have a systemic problem. If the government's wrong, and if you didn't get the hearing that they're talking about, the issue is whether you have to show prejudice in order to get a new hearing, or whether it's systemic, and if you have prejudice, whether you have prejudice or not, if you didn't get this right, then you get a new hearing. So I'm just trying to get the government's position about Montes, whether it effectively overrules Toddwise with respect to the prejudice issue. Well, Montes could not overrule a prior case. Right. I mean, it's a three-judge panel. So I guess that answers that question. Okay. I guess the question then is whether or not you have different kinds of situations, one where prejudice may be required and another where prejudice is not required. That would be my response. Okay. I'd also point out here regarding whether or not there was an effective waiver or the right to counsel. This is a Petitioner who spoke English. That was clear during the proceedings. He had been here for at least 10 years. He had been in LPR for 10 years. And I would point out as well, at page 162 of the record, his visa suggests that he had been here since he was 2 years old. So he's pretty familiar with the system here. Petitioner in his brief seems to suggest that there's an extensive analysis that's required, an extensive inquiry by the immigration judge. The cases show only that the immigration judge needs to ask whether an alien wishes to proceed with or without counsel and to receive a knowing and voluntary waiver. That is the ultimate question here. We don't have a Rule 11-type criminal colloquy here where it's necessary to show on the record all sorts of facts that are, that would indicate a knowing and voluntary waiver of all of the rights that a defendant has at a criminal case. The IJ's inquiry here was adequate to show a knowing and voluntary waiver. There are some cases that suggest that there's a need to assess whether or not there's a knowing and voluntary waiver. The cases seem to go back and forth between receiving one and assessing whether there is one. Here, the board explicitly assessed the knowing and voluntary nature of the waiver. And Petitioner does not complain that that was inadequate. So we would say that if there is a requirement to assess, look to the board's decision and you'll find that assessment there. And we looked at the board's assessment rather than our own? Well, to the extent that the court is requiring the agency to conduct an analysis, that analysis is found in the board's decision. Turning to the issue of Petitioner's removability, we believe that the analysis is straightforward. It's a double-tailor analysis, you might call it. Is the substantive offense categorically covered by the Federal reference to subordination of perjury? And then is the California definition of attempt categorically covered by the Federal understanding of attempt? And I gather that Saavedra Belasquez, from the government's perspective, clearly answers the latter question. That's absolutely correct, Your Honor. And there was no dispute regarding the former, either before the board or in the opening brief here. With respect to the type of analysis that the Petitioner proposes, we contend that it fails for five reasons. We've asserted that there's no exhaustion here. And if you look at the board's decision, the board clearly understood that a double-type tailor analysis is necessary here. The board had no warning that this was coming, and so had no opportunity to consider the issue that Petitioner is now raising. The four other reasons that Petitioner's theories fail would be that Saavedra's precedent indicates how the analysis should proceed. In addition, the structure of the aggravated felony statute shows that attempts should not be defined differently with respect to each kind of aggravated felony. There is one provision referring to attempt. That's subsection U. That word is intended to apply to all of the subsections defining various aggravated felonies. Yet if you take Petitioner's approach, attempt would end up having different meanings for different crimes. And with respect to this particular crime, Petitioner appears to be attempting to nullify the idea that attempted subordination of perjury could be an aggravated felony. I mean, as I understand the argument, essentially you could never find that attempted subordination of perjury is an aggravated felony. And yet the statute clearly contemplates that you can. Finally, we point out the related to language in the definition of the aggravated felony, which we believe provides an expansive definition of the term. So for all of these reasons. Kennedy. The California definition of subordination of perjury is narrower than the Federal definition, is it not? In the sense of willfulness? Well, there has been no issue raised on that point here, Your Honor. And we've proceeded as though they're identical and there's no issue about a categorical match. I raise the point only to say that it seems like it is a categorical match because it's not broader. In fact, it's narrower. That's correct. If there's any problem here, as I understand the Court's question, if the California definition is narrower, then you still have a categorical match. Right. It helps you. Yes, Your Honor. For all of these reasons, unless there are further questions, we'd ask that the Court deny the petition. No further questions. Thank you, counsel. Thank you very much. Ms. Kopp, you have some reserve time. Thank you, Your Honors. Just a few points that I'd like to follow up on from what the government raised. First is the exhaustion issue. Now, this Court has never required that a petitioner exhaust every last argument. What the case law requires is that a petitioner raise every issue. And the issue raised below was whether or not Mr. Romero's conviction qualifies as an aggravated felony. And that's the same issue that we're talking about here today, is whether it qualifies as an aggravated felony. Second, Your Honors, is the Montes-Lopez case that you raised, Judge Smith. And while we agree with the government that Montes did not overrule Talladrez because Talladrez left it an open question as to whether prejudice must be shown, Montes is very clear that an immigrant need not show prejudice if they show that the right to counsel was denied. And finally, just going back to the attempted subordination of perjury issue, Gomez-Hernandez really is instructive in this case. That case tells us that we need to not look with, quote, myopic focus at this bifurcated analysis, that the Court needs to not apply this hyper-formalistic approach. What we need to do is look at the actual crime of conviction. Mr. Romero was convicted of attempted subordination of perjury. Not attempt and not subordination of perjury. And when you look at the conviction as a whole, as Gomez-Hernandez tells us we must do, you see that it shares the exact same elements of solicitation. And because of that, it cannot be an aggravated felony. Thank you very much, counsel. The case just argued will be submitted for decision. And we will hear argument next in United States v. Dunn. While they're coming up, I just would like to comment. Are you, you're pro bono, right? And are you a practicing lawyer? Are you a student? Or what are you? Okay. Well, you did a great job. Congratulations. Whatever the outcome of the case, you can take satisfaction in the quality of your  You did an excellent job. Thank you for being here and thanks for doing what you're doing.
judges: Anello, O'scannlain, Smith